UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HANNAH WINCHESTER,

    Plaintiff,

v.                                                                                                  Case No.: 6:20-cv-1225-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Hannah Rose Winchester[1] judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Plaintiff is a transgender individual who is currently using the name Jack or Jak Winchester. (Doc. 29, p. 1 n.2, Tr. 37). Plaintiff identifies as a male and prefers masculine pronouns. (Doc. 29, p. 1). The Court will therefore refer to Plaintiff by using masculine pronouns.

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for supplemental security income benefits on April 15, 2018, alleging disability beginning June 1, 2015. (Tr. 66, 198-202). Plaintiff later amended the onset date to April 15, 2018, the application date. (Tr. 16, 325). The application was denied initially on July 10, 2018, and upon reconsideration on January 11, 2019. (Tr. 66, 80). Plaintiff requested a hearing and on October 9, 2019, a hearing was held before Administrative Law Judge ("ALJ") Eric S. Fulcher. (Tr. 35-64). On October 30, 2019, the ALJ entered a decision finding Plaintiff not under a disability since April 15, 2018, the date of the application. (Tr. 16-29).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on May 12, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on July 10, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 22).

### D. Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2018, the application date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "seizure disorder/convulsions, complex regional pain syndrome, amplified pain

syndrome, reflex sympathetic dystrophy, neuropathy, obesity, depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 416.967(b). The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected height or around moving mechanical parts. The claimant cannot operate a motor vehicle as part of his work duties. The claimant can have occasional exposure to vibration. The claimant can perform simple, routine, and repetitive tasks and make simple work-related decisions. The claimant can occasionally interact with supervisors and coworkers, but can have no interaction with the public (this limitation does not preclude work where the public is present, but work which requires interaction with the public as part of regular work duties).

(Tr. 20). At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 27).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform.

(Tr.27-28). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) marker, DOT[2] 209.587-034, light, unskilled, SVP 2.

(2) checker I, DOT 222.687-010, light, unskilled, SVP 2

(3) router, DOT 222.567-038, light, unskilled SVP 2

(4) document preparer, DOT 249.587-018, sedentary, unskilled, SVP 2

(5) parimutuel-ticket checker, DOT 219.587-010, sedentary, unskilled SVP 2

(6) addresser, DOT 209.587-010, sedentary, unskilled, SVP 2.

(Tr. 28). The ALJ concluded that Plaintiff had not been under a disability since April 15, 2018, the date the application was filed. (Tr. 29).

## II.    Analysis

On appeal, Plaintiff raises a single issue: whether the ALJ properly considered[3] the medical opinions of record based on an adequate rationale and substantial evidence at each stage of the sequential evaluation. Plaintiff argues that ALJ did not properly consider the opinions of Carl Barr, D.O., Linda Riley, Ph.D.,

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

[3] Plaintiff used the term "weigh" in stating the issue and throughout his argument. As the Court discusses in this section, for applications filed after March 27, 2017 – like this application – the Commissioner considers the persuasiveness and supportability of the opinion, as well as other factors. 20 C.F.R. § 416.920c.

Tangela Culpepper, Ph.D., Koraly Horvath, M.D., and Mercedes DeCubas, Ph.D. (Doc. 29. p. 21).

At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016). For disability cases filed after March 27, 2017, a new standard applies for considering medical opinions. *See* 20 C.F.R. § 404.1520c. The Commissioner no longer defers or gives any specific evidentiary weight, including controlling weight, to any medical opinion or prior medical finding. 20 C.F.R. § 404.1520c(a). Instead, the Commissioner considers the medical opinions together using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant – including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)1-5. The most important factors considered to determine the persuasiveness of the medical opinions or prior administrative medical findings are supportability and consistency. 20 C.F.R. § 404.1520c(a).

### 1. Dr. Barr's Opinion

Plaintiff argues the ALJ erroneously found Dr. Barr's opinion not persuasive. (Doc. 29, p. 28-29). Plaintiff claims the ALJ lacked familiarity with Plaintiff's diagnosis of Complex Regional Pain Syndrome ("CRPS") and discounted the opinion for improper reasons. (Doc. 29, p. 28-29).

The ALJ summarized some of Dr. Barr's treatment notes. In July 2018, the ALJ noted that Plaintiff reported he was doing well on Tramadol and CBE oil, but he had good days and bad days with pain. (Tr. 22 (citing Tr. 722-26)). The ALJ described Plaintiff's report of sharp pain in his right eye that could last 20 minutes, and occur about three times per week. (Tr. 22 (citing Tr. 722-26)). The ALJ also noted that an examination of the eye was unremarkable, the detailed neurological examination was also unremarkable, and Plaintiff was continued on his medications. (Tr. 22 (citing Tr. 722-26)). The ALJ summarized treatment notes from January 14, 2019 and January 23, 2019. (Tr. 23). The ALJ noted that Plaintiff was experiencing oral pain due to impacted wisdom teeth and neuropathy and was continued on Tramadol for pain control. (Tr. 23). The ALJ also noted that Plaintiff reported he had two to seven episodes of chronic regional pain syndrome a week. (Tr. 23). He experienced an aura or warm sensation behind his eyes, medication reduced his "shocks sensations," he had not been sleeping well, and he declined a suggestion for

additional medication. (Tr. 23). The ALJ also noted that his examination was unremarkable. (Tr. 23).

The ALJ thoroughly summarized Dr. Barr's September 23, 2019 Reflex Sympathetic Dystrophy (RDS)/Complex Regional Pain Syndrome Type I (CRPS) Medical Source Statement as follows:

> [Dr. Barr] noted the claimant experiences swelling, changes in skin color or texture, skin temperature changes, involuntary movements of the affected region, and neuropathy. He was unable to clearly determine the claimant's prognosis because the etiology of the claimant's impairment was unknown. He noted that the claimant's medications may cause mood changes, drowsiness, and sedation (Exhibit 21F). He estimated the claimant cannot walk a full city block without rest or severe pain. The claimant can sit for 45 minutes to an hour at one time. The claimant can sit for about four hours total in an eight-hour working day (with normal breaks). He estimated the claimant can stand for up to twenty minutes at one time. The claimant can stand and walk for less than two hours total in an eight-hour working day (with normal breaks) (Exhibit 21 F). The claimant needs a job that permits shifting positions at will from sitting, standing, or walking. Dr. Barr further indicated the claimant needs periods of walking around during a working day. The claimant must walk every 90 minutes for 5 minutes each time. The claimant will need to take unscheduled breaks about five to six times during a working day due to muscle weakness, chronic fatigue, pain/paresthesias, numbness, body temperature fluctuation, and inflammation. He will need 5 minutes up to an hour to rest before returning to work. While engaging in occasional stand and walking, the claimant must use a cane or other hand-held assistive device. During prolonged sitting, the claimant's leg should be elevated 18 inches occasionally to frequently during an 8-hour working day due to inflammation and pain (Exhibit 21F). Dr. Barr indicated the claimant can occasionally lift and carry 10 pounds and less than ten pounds frequently. The claimant can frequently twist, occasionally stoop (bend), and rarely crouch or squat. He opined the claimant has significant limitation with

>reaching, handling, and fingering. The claimant can grasp, turn, and twist objects on less than an occasional basis. The claimant can occasionally to frequently perform fine manipulation. The claimant can occasionally to frequently reach in front of his body. The claimant can reach overhead on less than an occasional basis (Exhibit 21F). Dr. Barr further noted the claimant will likely be off task twenty-five percent [or] more due to his symptoms being severe enough to interfere with attention and concentration needed to perform even simple work tasks. The claimant is capable of performing low stress work. The claimant will have good hours and bad hours. The claimant will likely be absent from work more than four days per month as a result of the impairments or treatment. The claimant is sensitive to barometric pressure changes, weather, environmental temperature extremes and changes, and noise (Exhibit 2lF).

(Tr. 26-27).

The ALJ found Dr. Barr's opinion unpersuasive for mainly three reasons. (Tr. 27). First, the ALJ noted that Dr. Barr found Plaintiff's pain complaints out of proportion to the documented evidence. (Tr. 27). Second, the ALJ found Dr. Barr's opinion that Plaintiff was unable to sustain even less than sedentary exertional work inconsistent with him receiving only conservative and limited treatment since the application date. (Tr. 27). And third, the ALJ found that Dr. Barr's opinions are not supported by his largely normal examination findings and are inconsistent with consultative medical examiner, Martha Pollock, M.D.'s examination, which included unremarkable examination findings. (Tr. 27, 731-37).

CRPS[4] "is a chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03-2p, 2003 WL 223991, at *1 (Oct. 20, 2003).

> The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. *It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.* When left untreated, the signs and symptoms of the disorder may worsen over time.

*Id.* (emphasis added). Neither the parties nor the ALJ acknowledged or evaluated Plaintiff's CRPS under SSR 03-2p. "Because the pathogenesis of CRPS/RSDs is not entirely understood and because CRPS/RSDS is not a Listed Impairment under the Regulations, the Social Security Administration issued SSR 03–2p to explain its policies for developing and evaluating disability claims based on CRPS/RSDS." *Channell v. Kijakazi*, No. 2:18-cv-1059-JTA, 2021 WL 3131669, at *4 (M.D. Ala. July 23, 2021) (citing *Brooks v. Barnhart*, 428 F. Supp. 2d 1189, 1191 (N.D. Ala. 2006) (citing SSR 03-2p)). "Although the pathogenesis of this disorder (the precipitating mechanism(s) of the signs and symptoms characteristic of RSDS/CRPS) has not been defined, dysfunction of the sympathetic nervous system has been strongly implicated." SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20,

---

[4] CRPS and RSDS (Reflex Sympathetic Dystrophy Syndrome) are "synonymous and are used to describe a unique clinal syndrome that may develop following trauma." SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003).

2003). An abnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signs that may be misinterpreted as pain. *Id.* at *2.

CRPS typically presents as persistent, burning, aching, or searing pain that is initially localized to the site of an injury. *Id.* "The degree of reported pain is often out of proportion to the severity of the precipitating injury." *Id.* To diagnose CRPS, a claimant must present with persistent, intense pain along with swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury. *Id.* Conflicting evidence in the medical record is not unusual due to the transitory nature of this impairment and the complicated diagnostic process involved. *Id.* at *5. To assess whether a claimant's diagnosis of CRPS affects a claimant's ability to perform work-related functions:

> [o]pinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living, are important in enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC.

*Id.* at *7.

Here, the ALJ considered Plaintiff CRPS, but failed to mention or analyze it under SSR 03-2p. The reasons the ALJ gave to find Dr. Barr's opinions not persuasive conflict with SSR 03-2p. For example, to discount Dr. Barr's opinion, the ALJ noted that Plaintiff's pain complaints were out of proportion to the documented

- 13 -

evidence. (Tr. 27). But a common characteristic of this syndrome is that the degree of pain is out of proportion to the severity of any injury. SSR 03-2p, 2003 WL 223991, at *1 (Oct. 20, 2003). The ALJ also found Dr. Barr's opinion not persuasive because Plaintiff received only conservative and limited treatment. (Tr. 27). But receiving only "conservative" or "limited" treatment does not discredit a plaintiff or a medical provider's opinion when the individual is suffering from CRPS. *See Channell v. Kijakazi*, No. 2:18-cv-1059-JTA, 2021 WL 3131669, at *7 (M.D. Ala. July 23, 2021) (citing *Berstein v. Astrue*, Case No. 3:09-cv-17-J-34MCR, 2010 WL 746491 at *8 (M.D. Fla. Mar. 3, 2010)). The ALJ further found Dr. Barr's and consultative examiner Dr. Pollock's generally normal examination findings inconsistent with Dr. Barr's opinion. (Tr. 27). CRPS is a syndrome that is primarily based on subjective complaints, and objective medical evidence is not a legitimate basis for discounting Plaintiff's treating physician's opinion. *See Channell*, 2021 WL 3131669, at *7.

For these reasons, the Court finds the ALJ failed to properly address Dr. Barr's opinion and Plaintiff's CRPS especially given SSR 03-2p. The Court also finds the ALJ did not articulate sufficient reasons to find Dr. Barr's opinion was not supportable or consistent with the medical records in evidence. The Court further finds by determining Dr. Barr's opinion not persuasive, the ALJ's consideration of Plaintiff's other medical sources may have been colored by this determination,

especially as to Plaintiff's subjective complaints of pain, which may then have affected how the ALJ considered the other medical source statements. As a result, on remand, the Court will require the Commissioner to reconsider all of the medical evidence of record.

### III. Conclusion

The decision of the Commissioner is **REVERSED,** and this action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Barr's opinion as well as the other medical opinions of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 3, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties